94 So.2d 849 (1957)
Jean Mae ARONS, Appellant,
v.
Donald B. ARONS, Appellee.
Supreme Court of Florida, Division B.
April 10, 1957.
Rehearing Denied May 9, 1957.
*850 Charles H. Wakeman, Jr., Miami, for appellant.
Boardman & Bolles, Miami, for appellee.
O'CONNELL, Justice.
Donald B. Arons, appellee, brought suit for divorce against his wife, Jean Mae Arons, the appellant.
Mr. Arons sought a divorce and custody of the three minor children of the parties. Mrs. Arons filed a counterclaim for divorce and custody of the three children of the parties. Other relief was prayed for by both parties but is not involved in this appeal.
On motion of Mr. Arons, a special master was appointed to take testimony and submit his findings of fact and law to the court. Mrs. Arons did not object to the appointment of a master. Pursuant to the order of reference, which was in usual form, the special master took voluminous testimony and thereafter made his report to the chancellor. This report, consisting of a total of 29 pages, was exhaustive.
In his report the master recited, among other things, that the testimony was conflicting, "that it is to the best interest and welfare of said children that the custody of said children be awarded to" Mrs. Arons, the mother of the children, whom the master found to be a fit and proper person to have the custody of said children. He found Mr. Arons guilty of extreme cruelty. He recommended Mrs. Arons be granted a divorce from Mr. Arons and that she be awarded custody of the three minor children, with reasonable rights of visitation with said children to be given Mr. Arons.
Mr. Arons filed exceptions to the special master's report and after hearing thereon the chancellor entered a final decree wherein he decreed among other things that: (1) the parties be divorced each from the other; (2) the custody of the two younger children of the parties be given to Mrs. Arons; and (3) the custody of the oldest child of the parties be given to Mr. Arons. In each case the parents were given rights of visitation with the child or children living with the other. The decree also provided that when Mr. Arons was required to be out of the State of Florida for extended periods that the oldest child, custody of whom was given to Mr. Arons, was permitted to remain at the home of the paternal *851 grandmother of the child, a Mrs. Arons, Sr.
Mrs. Arons filed her notice of appeal. Both parties filed assignments of error.
Mrs. Arons contends that the chancellor erred in awarding custody to Mr. Arons of the oldest child, Jack Roberts Arons, who at the time of the proceedings below was eight years of age.
Mr. Arons contends that the chancellor was correct in awarding him custody of the child, Jack Roberts Arons, but erred in not also awarding him custody of the two younger children, Cathy Jean Arons and Debra Arons, who were respectively six years and four months of age at the time of the proceedings in the court below.
The other provisions of the final decree are not involved in this appeal.
Mrs. Arons, the appellant, contends that under the decisions of this Court the findings of fact made by the special master in this cause, which master was appointed on motion of Mr. Arons and with the apparent consent of Mrs. Arons, came to the chancellor bearing the dignity of a verdict of a jury and should not have been disturbed unless shown to be clearly erroneous. Harmon v. Harmon, Fla. 1949, 40 So.2d 209; Aldred v. Romano, Fla. 1952, 58 So.2d 436 and Frank v. Frank, Fla. 1954, 75 So.2d 282. She contends that the master's findings are correct and have not been shown to be clearly erroneous.
Mr. Arons, the appellee, agrees that the above cited cases are sound law, but argues that these same cases provide that the chancellor may override or modify the findings of the special master when justice requires, or when the record fails to contain competent substantial evidence in support of the master's findings. Mr. Arons contends that the record does not contain such evidence in support of the master's findings.
Both parties agree that the questions in this appeal must be decided by determining whether the special master's findings were supported by competent and substantial evidence.
The transcript of the testimony consists of 663 pages and no effort will be made to summarize it. Suffice it to say there was evidence that Mrs. Arons was a good mother and capable of rearing her children, and there was evidence to the contrary. Much of the evidence on both sides came from members of the families of the parties with the bias and prejudice usually and naturally found in such testimony. The master heard this evidence personally and having had the witnesses, and particularly having had the parties to this cause before him, he under our decisions is considered to have had a better basis for judging the effect to be given such testimony and for determining the capabilities and actions of the parties, as parents, than did the chancellor who, as we have done, could only refer to the written record.
While the chancellor recited no findings of fact in his final decree we must assume from the provisions of the decree, measured by the rule established in the cases cited above, that he found that there was competent substantial evidence to support the finding of the master to the effect that Mrs. Arons was a fit and proper person to have the custody of all the children of the parties. If this were not true he should not have awarded custody of the two younger children to her.
Further, we must assume that while he found the welfare of the two younger children would best be served by placing them in the custody of Mrs. Arons, the mother, he found the welfare of the oldest child would be best served by placing this child in the custody of Mr. Arons, the father.
In addition the chancellor must have found that the paternal grandmother of the children, Mrs. Arons, Sr., was also a fit and proper person to have the custody of the oldest child, and in fact that the oldest child would be better off in the care of the grandmother than in the care of *852 the child's own mother, since the decree provides that on those occasions when Mr. Arons, the father, is out of the State of Florida the oldest child may remain with the said grandmother rather than living with Mrs. Arons, the mother. The evidence shows that the father is out of the State at least six months of each year because of his employment.
The chancellor in effect overruled the special master in two particulars. First, he placed the oldest child in the custody of the father, Mr. Arons, whereas the master recommended that this child, as well as the other children, be placed with Mrs. Arons, the mother. Second, he provided that the oldest child could remain with the paternal grandmother when Mr. Arons was out of the State, whereas the master had found that the oldest child, who had spent about one half of his life in the care of the grandmother, Mrs. Arons, Sr., "did not receive proper care and training while in the custody of the Senior Mrs. Arons" and also found "that until the children, and particularly until Jackie Arons (the oldest child) is a little older and overcomes his present feeling of insecurity, that it would be for their best interest and welfare that they not be permitted to make any extended visits to the home of their grandmother Arons."
We have carefully searched the record in an effort to determine whether those findings of the master which were overruled by the decree of the chancellor could be said to be clearly erroneous. We have concluded that there was competent substantial evidence as well as sound logical reasoning to support the master's findings and recommendations on these points.
Although the father, Mr. Arons, contends that the chancellor erred in not giving him custody of the two younger children as well as custody of the oldest child, the real question before us is the custody of Jackie, the oldest child.
We have therefore given particular attention to determining whether the master was clearly erroneous in his findings and recommendations as to custody of Jackie, and whether there were special facts or circumstances which would support the distinction which the chancellor made in the matter of the custody of Jackie, as opposed to the two younger children.
The evidence shows that Jackie by consent of both the parties and with the consent of Mrs. Arons, Sr., had lived about half of his life with Mrs. Arons, Sr., but there is nothing to indicate that by this Mrs. Arons had waived or should be considered to have lost any of her rights as to custody of Jackie.
There is evidence that on some of the occasions of these visits by Jackie with Mrs. Arons, Sr., he was ill with childhood diseases, but this is no reflection on either parent.
As above stated, the evidence shows that Mr. Arons, because of his occupation, is required to be out of the State for at least half of the year. He proposed, if given custody of the children, to have the assistance of his mother, Mrs. Arons, Sr., and his sister, who live in Dade County, in caring for the children. There is evidence that the relationship between Mrs. Arons, the mother, and Mrs. Arons, Sr., the grandmother, is not friendly. The right of visitation granted to the mother in the decree will, while the child lives with or is cared for by the grandmother, be at best a hollow right.
While there is little doubt that if Mr. Arons has the custody of Jackie, the child will, through Mrs. Arons, Sr., receive more of the material things of life than if he is in the custody of his mother, this factor does not of itself mean that the child's total welfare will be best promoted thereby. Nor does it, of itself, justify the taking of a child from a parent who is a fit person to care for it.
The record shows that Jackie has had difficulties at school being somewhat *853 backward and perhaps insecure. The explanation for this is not apparent from the record, but it is obvious that the home of the parties has not been harmonious, else this case would not be before us. It is true also that Jackie has been shuttled between his parents' home and that of his grandmother and has been exposed to the apparent conflict between his mother and grandmother. There is also the fact the father has been absent for more than half of each year. The master found as above stated that Jackie did not receive proper care and training while with the grandmother, who has had the said child about half of his life. Any or all of these factors could account for the child's problems. But it cannot be said from the record that Mrs. Arons is the cause thereof. On the other hand we think that the evidence, and the inferences and the impressions which the master could have logically drawn therefrom, support his findings that the child would not be best off in the grandmother's care, which he would be for the most of the year under the decree. We hasten to say that the evidence does not show neglect or abuse of the child by the grandmother, but many children who are considered as problem children are so as a result of being overprivileged, not underprivileged We do not intend to reflect on the grandmother for her motives were good, nor is she a party to this suit.
There is competent substantial evidence to show that Mrs. Arons is a proper mother to Jackie and as able to care for him as the other children. There is nothing to indicate either because of great difference in age between the children, which there is not, or because of Jackie's problems that his mother cannot promote his welfare equally as well as that of the two younger children.
In fine, we find no reason which justifies the distinction made by the chancellor in dividing the children between the parties.
We are impressed with the fact too that the decree of the chancellor, which divides the children of the parties, will result in further destruction of what is left, after divorce, of this family unit. We are of the view that the children in a family should not be separated from each other and distributed about in different homes, except for the most compelling cause. For while brothers and sisters may not have a legal right to remain together, to share each others lives, and to grow up together, certainly they have a natural right to do so. Justice requires that society exercise its moral duty to insure that children in a family enjoy this right until such time as absolute necessity and the welfare of the children, itself, requires their separation. Such necessity does not exist here.
If further events show that the master's findings and recommendations were not for the best interest of the children or if the mother does not prove her ability to properly care for the children the chancellor, who by his decree retained jurisdiction of matters pertaining to the children, can make such changes as are required by the circumstances.
That portion of the final decree in this cause awarding the custody of Jack Robert Arons to Donald B. Arons, the appellee here and plaintiff below, is reversed and the chancellor is directed to enter a decree as to custody of this child which is in keeping with the special master's findings and recommendations. The chancellor is directed to take such further proceedings as shall be necessary to determine the question of support and maintenance for the minor child, Jack Robert Arons.
TERRELL, C.J., and THOMAS and ROBERTS, JJ., concur.