482 So.2d 546 (1986)
Nilsa BACHE, Appellant,
v.
Saeed BASHIR, Appellee.
No. 85-1830.
District Court of Appeal of Florida, Fourth District.
February 5, 1986.
Rehearing Denied February 26, 1986.
Roy L. Taylor, Miami, for appellant.
Norman D. Zimmerman of Zimmerman & Zimmerman, P.A., Pompano Beach, for appellee.
HERSEY, Chief Judge.
In this child custody case arising out of a 1979 dissolution of marriage proceeding, the former wife sought custody of the parties' eight-year-old son and nine-year-old daughter. The daughter lives with the wife; the son is with his paternal grandmother, a very elderly lady, in Pakistan. Both the husband and wife reside in Broward County, Florida. In response to the wife's petition, the husband sought to have custody of the son awarded to the child's paternal grandmother. The trial court awarded custody of the daughter to the wife and custody of the son to the husband, and further provided that the husband had no obligation to return the son to the United States. In addition, the court awarded child support to the wife but refused to hold the husband in contempt for failing to make child support payments from the date of dissolution. We affirm this latter aspect of the order being appealed by the wife, but reverse the award of custody of the son to the husband.
The trial court was bound to make a determination as to custody based primarily upon the best interests of the child. § 61.13(2)(b)1, Fla. Stat. (1983). Various factors enter into that determination, some of which merit discussion here.
First, section 61.13(3)(j), Florida Statutes (1983), provides that in addition to certain specific factors to be considered by the trial judge in determining custody and primary physical residence, the court should consider "[a]ny other factor considered by the court to be relevant to a particular child custody dispute." In this regard the trial judge should have considered the relevant factor of the husband's lack of interest in having custody of the child as strongly militating against an award of custody to him. At no time did *547 the husband seek custody of either child for himself.
Second, as the wife points out, although the trial court technically granted custody to the husband, since it did not require him to return the child to this country and he has indicated that he has no intention of doing so, the practical effect of the trial judge's order is to grant custody to the husband's mother in Pakistan.
The State of Florida recognizes that "a parent has a natural right to enjoy the custody, fellowship and companionship of his offspring." In re Guardianship of D.A. McW., 429 So.2d 699, 702 (Fla. 4th DCA 1983), aff'd, 460 So.2d 368 (Fla. 1984). Although in a contest between two fit parents the controlling test is the best interests of the child, in a contest between a natural parent and someone else, the rights of the parent must also be considered. 429 So.2d at 702. In applying the above rule, this court has held that "custody cannot be denied to a natural parent absent some disability on his part." Id. See also State ex rel. Sparks v. Reeves, 97 So.2d 18 (Fla. 1957); Pape v. Pape, 444 So.2d 1058 (Fla. 1st DCA 1984). "[E]xcept in cases of clear, convincing and compelling reasons to the contrary, a child's welfare is presumed to be best served by care and custody by the natural parent." Behn v. Timmons, 345 So.2d 388, 389 (Fla. 1st DCA 1977).
It is a strong public policy of this state "to assure each minor child frequent and continuing contact with both parents after the parents have separated or dissolved their marriage and to encourage parents to share the rights and responsibilities of child rearing." § 61.13(2)(b)1, Fla. Stat. (1983). In those rare cases where custody has been awarded to a grandparent vis-a-vis a fit parent, the circumstances have been such that the distances separating the parent and child would not be so great as to deny the parent the opportunity for a continuing relationship with the child. For example, see Scott v. Singleton, 378 So.2d 885 (Fla. 1st DCA 1979), cert. denied, 388 So.2d 1118 (Fla. 1980), overruled in part, In re Guardianship of D.A. McW., 460 So.2d 368 (Fla. 1984); Brannan v. Brannan, 284 So.2d 701 (Fla. 1st DCA 1973). In the instant case, the effect of the trial court's order is that the child will continue throughout his minority to live thousands of miles from his father, mother, and sister, with little or no opportunity to have contact with them. Thus the trial court's order is directly contrary to the state's public policy.
Another of the factors to be considered by the trial court in determining the primary physical residence of the child is which parent is "more likely to allow the child frequent and continuing contact with the nonresidential parent." § 61.13(3)(a), Fla. Stat. (1983). As a general rule, a parent who conducts herself properly in the children's presence should have the privilege of visiting her children, and removal of the children out of the state or the country, which renders the right of visitation a nullity, is thus disfavored. See Yandell v. Yandell, 39 So.2d 554 (Fla. 1949); McManus v. McManus, 238 So.2d 473 (Fla. 2d DCA 1970).
In the instant case, permitting the husband to keep the child in Pakistan will result in the wife, who is of modest means, seldom if ever being able to exercise her visitation rights. Therefore, this factor also indicates that the trial judge abused his discretion in awarding custody to the husband, since he clearly has no intention of allowing the child to have continuing contact with the wife, or even with himself.
Notwithstanding the above, it is recognized that where the final judgment contains no restriction on the child's residence, there is no bar to the child living out of the state or even out of the country, despite the fact that this may make visitation with the noncustodial parent much less frequent. McIntyre v. McIntyre, 452 So.2d 14 (Fla. 1st DCA 1984). However, there must be sufficient evidence before the trial court demonstrating that it is in the best interests of the child to allow him to reside out of the country, separated from the noncustodial parent. The record here lacks substantial, competent evidence to support a *548 finding that it is in the best interests of the parties' minor son to reside permanently in Pakistan with his paternal grandmother, separated from his father, mother, and sister. Cf. McIntyre (trial court did not err in determining it was in child's best interests to allow child to accompany mother, stepfather, and sister on stepfather's two-year tour of duty in Japan where, after period of estrangement, child was just reestablishing relationship with mother, to prevent separating the children, and to allow child benefit of experiencing different culture).
The wife also correctly points out that as a general rule the separation of siblings is disfavored and should be done only under the most compelling circumstances. Arons v. Arons, 94 So.2d 849 (Fla. 1957); Collier v. Collier, 384 So.2d 697 (Fla. 4th DCA 1980); Miller v. Miller, 371 So.2d 565 (Fla. 4th DCA 1979). No compelling reasons have been shown in the instant case for separating the parties' son and daughter.
The only evidence tendered in support of the proposition that the child's best interests would be served by permitting him to remain in Pakistan were some negative aspects of the child's history with his mother and, by way of positive evidence, testimony that the family in Pakistan is well-to-do, that the child lives in a large house, and that he was doing well in school and had forgotten all English and everything to do with the United States. The grandmother, reported to be elderly, did not appear before the court to permit the trial judge to form an impression as to her fitness. Thus, the primary evidence indicating that it is in the child's best interests to remain with the grandmother is her superior financial status, but this in itself is far from sufficient to justify a custody award. Anderson v. Anderson, 309 So.2d 1 (Fla. 1975); Kelly v. Kelly, 163 So.2d 498 (Fla. 2d DCA 1964). Further, as to the past negative aspects of the mother's living situation, it appears that her circumstances had materially changed prior to the custody hearing. In any event, her past difficulties, which were primarily financial, would not warrant a finding that the child should remain in the custody of his grandmother in Pakistan.
Because the award of custody of the son to the child's father has not been shown by substantial, competent evidence to be in the best interests of the child, we reverse. Upon remand the trial court is instructed to award sole custody of the parties' minor son to the wife; to direct that the child be returned from Pakistan forthwith; and to determine visitation rights and the appropriate amount of child support to be paid by the husband. We affirm in all other respects.
AFFIRMED IN PART; REVERSED IN PART and REMANDED.
LETTS and DELL, JJ., concur.